**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rochelle Roper, | No. CV-23-01507-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is Plaintiff Rochelle Roper's Application for Attorney Fees Under the Equal Access to Justice Act (Doc. 20, "App."), to which Defendant Social Security Commissioner filed a Response (Doc. 21, "Resp.") and Plaintiff filed a Reply (Doc. 27, "Reply").

## I.    BACKGROUND

In 2006, the Social Security Administration approved Plaintiff for Social Security benefits. (Doc. 1, "Req." at 1.) The agency paid out the benefits until 2018, when it determined that Plaintiff had medically improved. (Req. at 2.) Plaintiff appealed the cessation of her benefits, and in 2021, an Administrative Law Judge ruled favorably for Plaintiff. (Req. at 2.) In 2022, the Appeals Council issued a notice that it planned to vacate the ALJ's decision, but it did not remand the case until 2023. (Req. at 2.) On March 20, 2022, Plaintiff became entitled to interim benefits. *See* 42 U.S.C. § 423(h)(1). (Req. at 2.)

Plaintiff, however, did not receive her benefits, and in January 2023, Plaintiff's counsel began the evidently arduous process of attempting to obtain them. Over the course

1    of several months, Plaintiff's counsel repeatedly faxed, called, and emailed agency

2    representatives to no avail. (Req. at 2–5.) Finally, on July 28, 2023, Plaintiff filed a Request

3    for Order to Show Cause and Petition in the Nature of a Writ of Mandamus (Req.) in this

4    Court.

5          The Court ordered Defendant to respond to the Request by August 25, 2023. (Doc.

6    6.) Defendant requested an extension of time, asserting that the agency had recently

7    attempted to issue Plaintiff her payments but could not because Plaintiff's financial account

8    had been closed. (Doc. 10.) Defendant explained that the agency would issue a paper check

9    but it could take up to two weeks to reach Plaintiff, thus warranting a two week extension.

10   (Doc. 10.) The Court granted the motion, extending the time for Defendant to respond to

11   the Request for Order to Show Cause. (Doc. 11.) Defendant eventually explained that the

12   agency authorized the payment of past due benefits on August 9, 2023, and issued a paper

13   check on August 22, 2023. (Doc. 16 at 2.)

14         Defendant then suggested that the payment of interim benefits mooted the Request

15   for Order to Show Cause. (Doc. 16 at 2.) Plaintiff confirmed that she "received the check

16   from the Social Security Administration and it appears that the issues raise in the Writ of

17   Mandamus have been resolved." (Doc. 18.) Accordingly, the Court denied as moot

18   Plaintiff's Request for Order to Show Cause. (Doc. 19.) Plaintiff then applied for attorney's

19   fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (App.)

20   **II.    LEGAL STANDARD**

21         A court will award attorney's fees under the EAJA if a plaintiff shows "(1) the

22   plaintiff is the prevailing party; (2) the government has not met its burden of showing that

23   its positions were substantially justified or that special circumstances make an award

24   unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v.*

25   *Smith*, 279 F.3d 791, 793 (9th Cir. 2002). To be a "prevailing party," a litigant must achieve

26   a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. &*

27   *Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001).

28   **III.   ANALYSIS**

1    Plaintiff asserts she is entitled to fees under the EAJA because she "is a successful

2    party," as "the Writ and the action of this Court . . . prompted payment" to her. (App. at 2.)

3    Defendant responds that, although Plaintiff received the benefits she sought, it was

4    Defendant's "voluntary action" that led to such a result. (Resp. at 2.)

5    Defendant cites *Buckhannon*, in which the petitioners seeking fees pursued a

6    "catalyst theory." 532 U.S. at 601. The catalyst theory "posit[ed] that a plaintiff is a

7    'prevailing party' if it achieves the desired result because the lawsuit brought about a

8    voluntary change in the defendant's conduct." *Id.* at 601. The Supreme Court rejected this

9    theory, holding that "a party that has failed to secure a judgment on the merits or a

10   court-ordered consent decree, but has nonetheless achieved the desired result because the

11   lawsuit brought about a voluntary change in the defendant's conduct," is not a "prevailing

12   party." *Buckhannon*, 532 U.S. at 600. The Ninth Circuit has since clarified that judgments

13   and consent decrees are just two examples of the forms of judicial action that may

14   materially alter the legal relationship of the parties. *Carbonell v. Immigr. & Naturalization*

15   *Serv.*, 429 F.3d 894, 898 (9th Cir. 2005).

16   Here, Plaintiff essentially pursues a catalyst theory. Plaintiff's Application is

17   founded on her Request for Order to Show Cause, but the Court found the Request moot

18   after Plaintiff received her benefits. Although Plaintiff achieved her desired result by filing

19   the Request, the Request simply "brought about a voluntary change in the defendant's

20   conduct." *See Buckhannon*, 532 U.S. at 601 (describing the catalyst theory). As the

21   Supreme Court has rejected the catalyst theory, so too must the Court.

22   In an attempt to salvage her claim, Plaintiff argues in her Reply that it was not only

23   the filing of the Request that prompted Defendant's reaction but also the Court's Order

24   requiring Defendant to respond. (Reply at 8.) Plaintiff argues that before Plaintiff filed the

25   Request, "there was no consequence for the Commissioner's unreasonable delays." (Reply

26   at 8.) But after the Court imposed a deadline to respond, the "Commissioner could be held

27   in contempt or sanctioned" for "refusing to respond to plaintiff's demands for interim

28   benefits." (Reply at 9.) The Court's imposition of a deadline to respond, Plaintiff argues,

1    thus altered the legal relationship of the parties such that Plaintiff is a "prevailing party"

2    under the requirements of *Buckhannon*.

3         Plaintiff, however, mischaracterizes the Court's Order. In her Application and

4    Reply, Plaintiff asserts that the Court issued an Order to Show Cause. (App. at 2, Reply at

5    5.) This is incorrect. The Court ordered only that Plaintiff serve the Request for Order to

6    Show Cause and that Defendant respond. (Doc. 6.) In doing so, the Court imposed a

7    deadline for Defendant to "file a Response to the Request for Order to Show Cause and

8    Petition in the Nature of Writ of Mandamus." (Doc. 6 at 2.) The Court did not, as Plaintiff

9    suggests, order Defendant to "respond to plaintiff's demands for interim benefits." (Reply

10   at 9.) The Order thus did not materially alter the legal relationship of the parties. Plaintiff

11   was entitled to receive benefits from Defendant both prior to and after the Order. Although

12   the record reflects (somewhat troublingly)[1] that Plaintiff's Request served as the catalyst

13   for the ultimate receipt of her benefits, this is not sufficient to render Plaintiff a prevailing

14   party. *See Buckhannon*, 532 U.S. at 600. Because Plaintiff is not a prevailing party within

15   the meaning of *Buckhannon*, she is not entitled to fees under the EAJA. *See Perez-Arellano*,

16   279 F.3d at 793.

17        **IT IS THEREFORE ORDERED** denying Plaintiff's Application for Attorney

18   Fees Under the Equal Access to Justice Act (Doc. 20).

19        Dated this 1st day of May, 2024.

20

21   _____
     Honorable John J. Tuchi
     United States District Judge

22

---

23   [1]    While *Buckhannon* dictates the result in this matter as set forth above, that does not
     mean the Court condones the Commissioner's conduct of duties here. The record makes
24   clear that Plaintiff was entitled to interim benefits starting March 20, 2022, and Defendant
     did not appear to dispute that conclusion. Yet Defendant took no action to fulfill that
25   obligation due until Plaintiff's attorney took sustained and involved action, including well-
     documented multiple, regular, sustained, and iterative contacts with Social Security
26   Administration officials at several levels and ultimately the foiling of the instant Petition.
     It is unclear what more Plaintiff or her counsel could have done to get what all parties
27   acknowledge was due to her for a sustained period of time, and the Court wonders how
     many other individuals are or have been in similar circumstances but lacked the benefit of
28   counsel with sufficient knowledge and tenacity to drive a similar result. While Plaintiff
     here is not entitled to EAJA fees by operation of law under the facts of this case, the
     performance of Defendant's systems was glaring in its persistent deficiency.